IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
April 7, 2026 Session

**LAURA NAOMI CLIFTON v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Madison County**
**No. C-25-144          Joseph Howell, Judge**
_____

**No. W2025-01520-CCA-R3-PC**
_____

In May 2024, the Petitioner, Laura Naomi Clifton, pleaded guilty to two counts of sexual exploitation of a minor via electronic means, and the trial court entered the agreed sentence of concurrent two-year sentences, to be served at 30%. The plea agreement specified that the Petitioner would not be placed on the sex offender registry. After serving her sentence, the Petitioner was placed on the sex offender registry and forced to comply with its requirements. Accordingly, she filed a petition for post-conviction relief. During the hearing on the petition, the post-conviction court offered her time to consider her options. She went to the parking lot to consider the matter and, while she was outside, the post-conviction court dismissed her petition for failure to prosecute. The Petitioner asked the post-conviction court to reconsider, and it denied her request. After a review of the record, we reverse the post-conviction court's judgment, and we remand the case for a hearing during which the Petitioner should be given the opportunity to pursue her petition for post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

ROBERT W. WEDEMEYER, P.J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and JOHN W. CAMPBELL, SR., JJ., joined.

William W. Gill, Assistant Public Defender - Appellate Division, Franklin, Tennessee, Parker Dixon, Assistant Public Defender, Jackson, Tennessee, for the appellant, Laura Naomi Clifton.

Jonathan Skrmetti, Attorney General and Reporter; G. Kirby May, Assistant Attorney General; Jody S. Pickens, District Attorney General; and Shaun A. Brown, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from the Petitioner's convictions for two counts of sexual exploitation of a minor via electronic means entered on May 17, 2024. The guilty plea hearing transcript indicates that she was indicted with two co-defendants, Gary Allen Jordan and Amanda Walton. The State indicated that the indictment contained sixteen counts, and the Defendant agreed that the facts would support the charges in the indictment for the two counts to which she was entering her plea. The indictment is not included in our record on appeal.

The plea agreement signed by both the State and the Petitioner indicated that the guilty plea included the conditions that there would be "NO SOR," which the parties agreed meant no placement on the Sex Offender Registry ("SOR"). The trial court accepted the Petitioner's guilty plea, ordered her not to have contact with the victims, and entered the agreed sentence of concurrent two-year sentences, to be served at thirty percent.

The Petitioner served her sentence and was placed on the SOR. She filed a motion to be removed and was notified that her judgment was illegal because her offense mandated being placed on the SOR. On May 11, 2025, she filed a petition for post-conviction relief, asking to withdraw her guilty plea because she had been placed on the SOR. She indicated that she had three minor children who lived directly across from their school, so placement on the registry would severely impact their lives and her ability to see her children.

On June 16, 2025, the State responded and agreed that the Petitioner was entitled to post-conviction relief because she was told that the conviction did not require placement on the SOR. The prosecutor noted that the Petitioner did not make a bond in this matter, meaning if the petition was granted, the Petitioner needed to be taken into custody and a bond set.

On July 3, 2025, the Petitioner responded that she had served her sentence but was required to register on the SOR, even though her plea agreement did not so require. She asserted that, for these reasons, she was entitled to a reasonable bond. She asked the post-conviction court to release her on her own recognizance or, alternatively, to set a bond of not more than $10,000.

On July 7, 2025, the post-conviction court held a hearing on the post-conviction petition. The State informed the court that the Petitioner was told that she would not be required to register on the SOR but that, based on the conviction, she was required to register. The State said it did not oppose the granting of the petition for post-conviction relief but that she needed to be placed on bond. The Petitioner's attorney informed the court that he had asked that she be released on her own recognizance or that the court set a bond of not more than $10,000. The State then asked the Petitioner to state on the record

2

that she wanted to pursue her petition for post-conviction relief because "her main complaint cannot be accomplished absent a 'not guilty' verdict."

The post-conviction court placed the Petitioner under oath and asked her if she wished to move forward with her petition. The Petitioner said she did not know because she was under the impression that she could get a "lesser sentence." The court said, "We're not here on that. We're here on your pro se petition to withdraw your guilty plea through a petition for post[-]convicton relief" but did not explain further. The trial court asked, "And you wish to withdraw your plea?" The Petitioner attempted to whisper to her attorney. The court noted this and said, "And if you wish to speak to [your attorney], you're free to do that."

The Petitioner's counsel requested that he be allowed to ask the Petitioner some questions. Upon this questioning, the Petitioner said that she understood that, if she were allowed to withdraw her plea, the result would be that she start the process over at the beginning where she would be subject to continued prosecution and "theoretically could still end up on the sex offender registry." The Petitioner understood that, while the case was pending, she would be off the SOR but that she would have to go through the trial process again. The Petitioner said, "Yeah. I want to go through with it. It's worth a try."

The State then stated that "I just want her to understand she got concurrent sentencing on these two counts. She could get consecutive sentencing by the [c]ourt because her record is one of misdemeanors and a prior felony." The Petitioner attempted to argue why the statute to which she pleaded guilty was not applicable and that she should not have been convicted of this offense because there was no "gratification." The trial court interrupted her, saying that the parties were not there to try the case. Instead, they were present to decide the narrow issue of whether she should withdraw her guilty plea.

The Petitioner and her counsel began speaking off the record and the trial court stated, "And, again, Ms. Clifton, if you need to take a minute and y'all sit down and speak to this, I have no objection to that." The Petitioner's counsel asked to "pass it for a moment while she thinks about it." The court agreed and told the Petitioner, "We'll come back to your case." The court took a break from the matter from 12:17 p.m. until 1:08 p.m.

Returning to the matter, the State informed the trial court that the Petitioner had left. The court agreed that it had seen her going out the door but thought she was maybe just going out to discuss the case with her companion. The State informed the court that he had looked in both halls and spoken to the deputies who informed him that the Petitioner and her companion had left and had not come back. The State said, "So at this point, I guess she has failed to prosecute her post[-]conviction." The Petitioner's counsel said that he had no information and surmised that the Petitioner had left.

3

The trial court said, "I guess I will dismiss it for failure to prosecute." The court went on to state, "If she gets in touch with you in the next thirty days . . . ." The court did not complete the sentence. The Petitioner's counsel said, "Yes, Your Honor."

On July 10, 2025, three days after the hearing, the post-conviction court filed an order dismissing the petition. The order indicated that the Petitioner had left the courtroom and had not returned and that the petition should therefore be dismissed because "the [P]etitioner failed to remain in the courtroom and present her petition."

On July 14, 2025, the Petitioner filed a motion to reconsider her petition for post-conviction relief. She explained that the day of the hearing she panicked because she believed that she would be taken into custody if her motion was granted. While she had served her sentence, she had never made bond in this matter, so withdrawing her plea would place her bond status at issue. Post-conviction counsel asserted that he attempted to alleviate her concerns by filing a motion to release her on her own recognizance or set a low bond, but the Petitioner believed she could not pay any amount of bond. She asked the court to allow her to withdraw her guilty plea.

The post-conviction court held a hearing on the motion to reconsider. The Petitioner's counsel explained that the Petitioner became concerned at the hearing that she was going to be incarcerated, so she left to consider her options. She later decided she would, in fact, like to withdraw her guilty plea. The State asserted that the Petitioner left the building and the property on the day of the hearing, so she abandoned her claim, so her petition should be dismissed

The Petitioner testified that, during the hearing, the prosecutor mentioned her bond might be $10,000 and she did not have that money. She thought she would be incarcerated if she pursued her motion. The Petitioner said that she has been diagnosed with depression, bipolar disorder, attention deficit disorder, and post-traumatic stress disorder. The Petitioner said that, on the day of the hearing, she left the courtroom for about an hour and attempted to come back at 2:00 or 3:00 p.m. The door was locked, so she asked the clerk if she could open the door but was informed that she did not make it back in time. The Petitioner explained how having to register as a sex offender had impacted her life negatively. She said she wanted to withdraw her guilty plea, and she understood the potential impact of her decision.

During cross-examination, the State asked the Petitioner why she thought the post-conviction court's schedule "operat[ed] on what [she] wanted to do and when [she] wanted to do it." The Petitioner said she did not think it did, and the prosecutor responded, "Well, yeah you do." The prosecutor informed the Petitioner that the judge could have arrested

4

her for leaving the building on the day of the hearing. The Petitioner maintained that she just went to the parking lot, but when she returned, the door was locked. The Petitioner checked with the court clerk who said that court was over. The prosecutor said, "You understand the [c]ourt runs his docket, and the [c]ourt, he moves on, he rules. You weren't here. He ruled. . . . So why now does the judge have to open all this back up just because you say you wanted to, and you changed your mind now after a month later?"

The Petitioner said, "He doesn't have to, but . . ." and went on to explain that she was told she would not have to register as a sex offender but was then required to register. This was affecting her ability to see her children because they live near a school, as well as impacting other aspects of her life. The prosecutor said, "you have control over his docket is what you're basically saying rather than him control of yours."

On September 2, 2025, the post-conviction court denied the Petitioner's motion to reconsider. It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that the trial court erred when it dismissed her petition for failure to prosecute. The State first contends that the Petitioner did not timely file a notice of appeal, so her claim is waived, and next contends that the post-conviction court did not abuse its discretion.

### A. Notice of Appeal

The State asserts that we should dismiss the appeal because the Petitioner did not timely file her notice of appeal. The post-conviction court held a hearing on her motion July 7, 2025, and filed a written order July 10, 2025. She ultimately filed her notice of appeal on September 30, 2025, well beyond the deadline. An untimely notice of appeal can, and often does, result in a dismissal of the appeal. The Rules of Appellate Procedure, however, provide that the requirement of a timely-filed notice of appeal "may be waived in the interest of justice." Tenn. R. App. P. 4(a). Waiver of an untimely notice of appeal is never required, and "[i]f this Court were to summarily grant a waiver whenever confronted with untimely notices, the thirty-day requirement of Tennessee Rule of Appellate Procedure 4(a) would be rendered a legal fiction." *State v. Rockwell*, 280 S.W.3d 212, 214 (Tenn. Crim. App. 2007); *Matthews v. State*, No. W2021-00898-CCA-R3-PC, 2022 WL 1284288, at *2 (Tenn. Crim. App. Apr. 29, 2022), *no perm. app. filed.*

When considering whether a waiver on an untimely notice of appeal is appropriate, "this court will consider the nature of the issues presented for review, the reasons for and the length of the delay in seeking relief, and any other relevant factors presented in the

particular case." *Rockwell*, 280 S.W.3d at 214. "Other relevant factors may include the merits of the appeal." *State v. Murray*, No. M2020-00168-CCA-R3-CD, 2021 WL 2156932, at *3 (Tenn. Crim. App. May 27, 2021), *no perm. app. filed*. The appealing party "bears the responsibility to properly perfect his [or her] appeal or to demonstrate that the 'interests of justice' merit waiver of an untimely filed notice of appeal." *State v. Thomas*, No. W2022-00109-CCA-R3-CD, 2023 WL 328337, at *3 (Tenn. Crim. App. Jan. 20, 2023), *perm. app. denied* (Tenn. June 7, 2023); *see also* Tenn. R. App. P. 4(a).

When considering the aforementioned factors, we conclude that the interests of justice require that we waive the timeliness of the notice of appeal. The nature of this case involves the State improperly informing the Petitioner that she would not have to register as a sex offender. After serving multiple years of incarceration, she was required to register on the SOR, which negatively impacts multiple aspects of her life including her ability to see her children. We further find that there is merit to this appeal, and we grant the Petitioner relief, which is also a valid basis for waiver. *See Murray*, 2021 WL 2156932, at *3. We therefore turn to address the merits of this appeal.

## B. Dismissal for Failure to Prosecute

"[A] trial court has inherent authority to dismiss a petition for post-conviction relief with prejudice based on a petitioner's failure to prosecute." *Caraway v. State*, No. W2021-00360-CCA-R3-PC, 2022 WL 1580639, at *7 (Tenn. Crim. App. May 19, 2022) (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 630-33 (1962)), *perm. app. denied* (Tenn. Sept. 29, 2022). A post-conviction court may dismiss a post-conviction petition on their own motion for failure to prosecute, but "'this authority should be exercised sparingly and with great care.'" *Id.* (quoting *Hodges v. Att'y Gen.*, 43 S.W.3d 918, 921 (Tenn. Ct. App. 2000)). This court has upheld the dismissal of a post-conviction petition for failure to prosecute when the Petitioner abused the post-conviction process. *See Dillard v. State*, No. W2010-00306-CCA-R3-PC, 2011 WL 744740, at *6 (Tenn. Crim. App. Mar. 1, 2011), *perm. app. denied* (Tenn. May 27, 2011). It is settled that, if the post-conviction court "discerns that a litigant is abusing the post-conviction process by filing successive petitions and seeking repeated withdrawals, or is otherwise acting in bad faith, dismissal of the action for failure to prosecute, with prejudice to the petitioner's right to refile the petition, would be proper." *Williams v. State*, 831 S.W.2d 281, 283 (Tenn. 1992); *see Cazes v. State*, 980 S.W.2d 364, 365 (Tenn. 1998) (stating that "[t]hose who abuse the [post-conviction] process cannot be heard to complain when access to the remedy is denied").

This court has also, however, reversed the dismissal of a post-conviction petition for failure to prosecute when the record did not establish an abuse of process. *See McWilliams v State*, W2019-00935-CCA-R3-PC, 2020 WL 3410239, at *1 (Tenn. Crim. App. June 19, 2020) (reversing the dismissal when the petitioner failed to appear to court

twice for a hearing on the post-conviction petition), *no. Tenn. R. App. P. 11 application filed*; *see also McLeod v. State*, W2024-01786-CCA-R3-PC, 2025 WL 3034326, at *1 (Tenn. Crim. App. Oct. 30, 2025) (reversing the dismissal when the petitioner's case had to be reset seventeen times), *no Tenn. R. App. P. 11 application filed.* Dismissal would be improper when the record does not show that the petitioner caused the delays in the case, and the post-conviction court does not make adequate findings of fact and conclusions of law to support its decision to dismiss. *See McLeod*, at *5 (citing *Nance v. State*, No. E2005-02265-CCA-R3-PC, 2006 WL 1575110, at *3 (Tenn. Crim. App. June 9, 2006)). We review a post-conviction court's dismissal of a post-conviction petition for failure to prosecute under an abuse of discretion standard. *Id.* (citing *Caraway*, 2022 WL 1580639, at *7).

The *McLeod* court described two cases that we find instructive here:

In *Jackson v. State*, No. W2019-00731-CCA-R3-PC, 2020 WL 5792961, at *1 (Tenn. Crim. App. Sept. 25, 2020), the petitioner filed his pro se petition for post-conviction relief in March 2017, and the post-conviction court appointed counsel. Despite having counsel, the petitioner proceeded to file numerous pro se amended post-conviction petitions and pro se motions seeking continuances, seeking recusal of the post-conviction court, seeking removal of appointed counsel, and seeking to represent himself. *Jackson*, 2020 WL 5792961, at *2-3. At a hearing in November 2018, the post-conviction court expressed frustration with the delays in the case and warned the petitioner that an evidentiary hearing would occur at the next scheduled hearing or would be dismissed. *Id.* at *3. At the petitioner's final hearing on March 21, 2019, the post-conviction court removed counsel from representation and allowed the petitioner to proceed pro se but again warned the petitioner that the case would be "handled" that day or dismissed. *Id.* The petitioner advised the post-conviction court that he was not prepared to proceed pro se and requested another continuance, but the post-conviction court denied the request and dismissed the petition for failure to prosecute, noting that the case already had been scheduled for an evidentiary hearing several times and concluding that the petitioner had " 'persisted in interfering with the administration of justice.'" *Id.* at *4. Subsequently, the post-conviction court entered a sixteen-page "comprehensive" order in support of its dismissal. *Id.* at *4. On appeal, this court reversed the post-conviction court, concluding that the record did not demonstrate that a significant delay in the case could be attributed to the petitioner, that the petitioner's pro se filings while represented by counsel were a nullity, and that the post-conviction court's granting the petitioner's request to proceed pro se and then

7

demanding that he immediately represent himself at the evidentiary hearing was unreasonable. *Id.* at *5.

In contrast, in *Dillard v. State*, . . . 2011 WL 744740, at *6 . . ., this court found "abundant evidence that the petitioner abused the post-conviction process" when the petitioner had "repeated opportunities" for an evidentiary hearing, the post-conviction court warned the petitioner that he would be required to proceed with an evidentiary hearing on a particular date, the petitioner refused to present his proof on that date, and his behavior caused delays in the case. *See id.* at *5-6.

In another case cited by *McLeod*, the *Caraway* case, this court upheld the post-conviction court's dismissal of the petitioner's post-conviction petition for failure to prosecute when more than four years passed between the petitioner's filing his pro se petition and the dismissal. 2022 WL 1580639, at *2-3. During that time, the case was reset approximately twenty-six times, mostly at the petitioner's request. The post-conviction court warned the petitioner that it was going to dismiss the petition for failure to prosecute six months before the court did so. *Id.* After orally dismissing the petition, the post-conviction court issued a twenty-five-page written order setting out its "extensive" factual findings and conclusions of law. *Id.* at *3. This court ruled that the post-conviction court "did not act unreasonably, arbitrarily, or unconscionably in dismissing the petition." *Id.* at *8.

In the case under submission, the Petitioner filed her petition for post-conviction relief on May 11, 2025. A hearing on the petition, at which the Petitioner was present, was held on July 7, 2025. At the hearing, after the Petitioner exhibited concern about the bond issue, the post-conviction court asked the Petitioner if she still wanted to withdraw her plea, and she responded, "Yeah. I want to go through with it. It's worth a try." The State then informed her that she could get consecutive sentencing and, when the Petitioner sought clarity about the statutory requirements of the statute she was convicted under, she was told that the hearing was only on the narrow issue of whether she should withdraw her plea.

The Petitioner and her counsel began speaking off the record and the post-conviction court stated, "And, again, Ms. Clifton, if you need to take a minute and y'all sit down and speak to this, I have no objection to that." The Petitioner's counsel asked to "pass it for a moment while she thinks about it." The post-conviction court agreed and told the Petitioner, "We'll come back to your case." The court took a break from the matter from 12:17 p.m. until 1:08 p.m. The court then dismissed the Petitioner's petition but told her counsel to inform him if she changed her mind in the next thirty days. Three days later, the court filed a written order dismissing the petition. The Petitioner filed a motion to reconsider four days later, seven days after her hearing, saying she panicked when she

8

thought she was going to be taken into custody.  At a hearing, she explained that she went to the parking lot to consider options. She remained there for an hour and, when she attempted to return, the doors were locked and the court clerk informed her that court was adjourned.  The trial court denied her motion.

Based on these facts, and the interests of justice, and the precedence of this court, we conclude that the post-conviction court abused its discretion when it dismissed the Petitioner's petition for failure to prosecute.  The Petitioner was clearly not abusing the judicial process.  She was confronted with a difficult decision.  She attempted to ask for clarity, which she was not given.  She was unsure what her bond would be, whether she would have to go back into custody despite having already served over two years, and whether the facts of her case even supported the statute pursuant to which she was convicted.  Navigating all these factors, she stepped outside to consider her options in the parking lot.  Upon attempting to return, she found the doors locked.  She contacted her attorney and told him that she still wanted to withdraw her guilty plea, and her attorney informed the post-conviction court of this fact seven days after the hearing.  Notably, the post-conviction court gave counsel thirty days to inform it of any change in the Petitioner's mind and then filed a written order three days later without further notice to counsel or to the Petitioner.  To conclude, the record does not demonstrate that the Petitioner abused the post-conviction process or acted in bad faith.  Accordingly, we conclude that the post-conviction court erred by dismissing the petition for failure to prosecute.

We note that the Petitioner's case involves an hour in making a decision.  We reversed a post-conviction court's dismissal for failure to prosecute when the Petitioner had reset the case seventeen times.  As previously stated, dismissal for failure to prosecute is an authority that should be exercised "sparingly" and "with great care.'" *Caraway*, 2022 WL 1580639, at *7.  The prosecutor's allegation that the Petitioner thought the court's schedule "operat[ed] on what [she] wanted to do and when [she] wanted to do it" is wholly unfounded.  At the suggestion of the post-conviction court, the Petitioner took some time to consider her options and found herself locked out of the courtroom.  Although the post-conviction court told the Petitioner's counsel to notify the court should Counsel hear from the Petitioner, three days later, the post-conviction court dismissed the petition without further communication with the Petitioner or her counsel.

We reverse the post-conviction court's dismissal of the Petitioner's petition for failure to prosecute.  We remand this case for a hearing during which the Petitioner may be allowed to withdraw her guilty plea, based on the fact that the State improperly informed her that she would not be required to register as a sex offender after her release, as clearly evidenced by the record.  The record supports a finding that the Petitioner has frequently and consistently appeared at court, which should be considered in setting her bond.

## III. Conclusion

Upon review, we conclude that the trial court abused its discretion when it dismissed the Petitioner's petition for post-conviction relief for failure to prosecute.  We remand for a hearing that is consistent with this opinion.


      S/ *ROBERT W. WEDEMEYER*

ROBERT W. WEDEMEYER, PRESIDING JUDGE